


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

ANDREA NATHAN, on behalf of herself, all others similarly situated,
Plaintiff,
v.
VITAMIN SHOPPE, INC.,
Defendant.

Case No.: 3:17-cv-01590-BEN-KSC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT [Doc. 12]**

Defendant Vitamin Shoppe, Inc. moves to dismiss Plaintiff Andrea Nathan's First Amended Complaint. [Doc. 12.] For the reasons that follow, Defendant's motion is **GRANTED IN PART AND DENIED IN PART**.

## I. BACKGROUND

On June 26, 2017, Plaintiff filed this action in the San Diego Superior Court, asserting individual and putative class state-law claims for violation of California's Unfair Competition Law, False Advertising Law, Consumer Legal Remedies Act, and for breach of express and implied warranties. On August 25, 2017, Defendant removed the action to this Court based on diversity jurisdiction. [Doc. 1.] On February 20, 2019, the Court granted without prejudice Defendant's motion to dismiss Plaintiff's Complaint, including granting leave to Plaintiff to amend her pleading. [Doc. 10.] Plaintiff then filed a First Amended Complaint ("FAC"), which Defendant now moves to dismiss. [Docs. 11, 12.]

According to Plaintiff's FAC, Defendant Vitamin Shoppe distributes, markets, and sells Garcinia Cambogia Extract[1] (the "Product") nationwide, including in California. In February 2017, Plaintiff Andrea Nathan purchased a 180-caplet bottle of the Product from Defendant in San Diego, California for approximately $20. The Product's label provided promises of "Weight Management" and "Appetite Control," which led Plaintiff to believe "the Product was an effective dietary aid that would aid weight loss" and would help her to manage her weight and control her appetite. [Doc. 11 at ¶¶ 116-118.]

Plaintiff alleges "[t]he representations on the Product's label were and are false and misleading, and had the capacity, tendency, and likelihood to confuse or confound Plaintiff and other consumers acting reasonably (including the putative Class) because . . . the Product cannot deliver the purported benefits and is no more effective than a placebo." [*Id.* at ¶ 119.]

## II. DISCUSSION

On a motion to dismiss under Rule 12(b)(6), the Court must accept the Complaint's allegations as true and construe all reasonable inferences in favor of the nonmoving party. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). To avoid dismissal, Plaintiff's Complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

---

[1] Throughout their briefing, the parties appear to use Garcinia Cambogia Extract ("GCE") and Hydroxycitric Acid ("HCA") interchangeably and as referring to the same supplement, including by referencing studies that use either or both terms. *See also* Plaintiff's FAC [Doc. 11 at ¶ 15 ("Randomized, placebo controlled scientific studies demonstrate that Garcinia Cambogia extract and/or HCA does not provide appetite control benefits in humans.")] Therefore, for purposes of this motion, the Court also refers to both terms interchangeably throughout and considers them to be the same.

In its previous Order dismissing Plaintiff's Complaint, the Court emphasized the distinction between the Product's actual promises of "Weight Management" and "Appetite Control" and the Product's alleged misrepresentations about weight *loss*. Specifically, the Court reasoned that "'Weight Management' suggests management or control of one's weight, whose upward or downward departure may differ depending on an individual person's goals, *i.e.*, to gain, lose, or maintain one's weight." [Doc. 10 at p. 5.] Similarly, "'Appetite Control' indicates control of one's appetite, which may or may not ultimately result in weight-loss." [Doc. 10 at p. 5.] Meanwhile, "weight loss" indicates a decrease in one's weight. Because of these distinctions, the Court found Plaintiff's Complaint failed to state a claim because it equated the Product's promises of "Weight Management" and "Appetite Control" with promises of weight loss, an entirely different promise.

The Court additionally found Plaintiff's Complaint's reliance on only one study that actually addressed the representations at issue ("Weight Management" and "Appetite Control") did not state a claim of falsity or misrepresentation because of its qualifying language. [Doc. 10 at p. 5 (explaining that the study's "state[ment] that its results 'did not support the hypothesis that HCA supplementation may be effective on appetite and weight control' was qualifying language not sufficient to raise a plausible claim of falsity or a misrepresentation").]

In her First Amended Complaint ("FAC"), Plaintiff addresses both of the defects present in her original Complaint. First, she alleges throughout her Complaint that the Product additionally misrepresents its ability to help consumers control their appetites and manage their weights, which tracks the Product's promises of "Appetite Control" and "Weight Management." Second, she supports her FAC with citations to several additional scientific studies supporting her contention that the Product's claims are false or misleading, and she pleads additional allegations about those studies to provide context and clarify their results. Defendant again moves to dismiss the FAC, in whole or in part, on six separate grounds: (1) the FAC's CLRA, FAL, and UCL claims allege nothing more than noncognizable claims for "lack of substantiation"; (2) the FAC's CLRA, FAL, and

UCL claims do not allege false or misleading misrepresentations; (3) the FAC's claims fail under the primary jurisdiction doctrine; (4) Plaintiff lacks standing to seek injunctive relief; (5) the FAC's fraud-based claims do not satisfy Rule 9(b); and (6) the FAC fails to state a claim for breach of an express or implied warranty. The Court addresses each argument in turn.

**A. Lack of Substantiation**

In essence, Plaintiff's claims under California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumer Legal Remedies Act ("CLRA") are each premised on her contention that Defendant's Product does not provide weight management, appetite control, and/or weight loss benefits. As in its first motion to dismiss, Defendant again argues these claims must be dismissed because they are based entirely upon lack of substantiation allegations for which there is no private right of action. The Court does not agree.

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. The FAL makes it unlawful for a business to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500. The CLRA prohibits any "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770.

Private litigants may not bring suit under the UCL, FAL, or CLRA alleging only that advertising claims lack substantiation. *See Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.,* 133 Cal. Rptr. 2d 207, 213 (Cal. App. Ct. 2003); *Stanley v. Bayer Healthcare LLC,* 2012 WL 1132920, at * 3 (S.D. Cal. 2012). That right is reserved for "the Director of Consumer Affairs, the Attorney General, any city attorney, or any district attorney." Cal. Bus. & Prof. Code § 17508. As a result, private litigants must allege actual falsity or misrepresentation for their UCL, FAL, and CLRA claims, and may do so by

citing to "testing, scientific literature, or anecdotal evidence." *Alvarez v. NBTY, Inc.*, 2017 WL 6059159, at *8 (S.D. Cal. Dec. 6, 2017) (quoting *Kwan v. SanMedica Int'l, LLC*, 854 F.3d 1088, 1095-96 (9th Cir. 2017)).

In the false advertising context, an advertising claim is false if it has "actually been disproved," that is, if the plaintiff can point to evidence that directly conflicts with the claim. *Eckler v. Wal–Mart Stores, Inc.,* 2012 WL 5382218, at *3 (S.D. Cal. Nov. 1, 2012). By contrast, an advertising claim that merely lacks evidentiary support is said to be unsubstantiated. *Id.* ("There is a difference, intuitively, between a claim that has no evidentiary support one way or the other and a claim that's actually been disproved. In common usage, we might say that both are 'unsubstantiated,' but the caselaw (and common sense) imply that in the context of a false advertising lawsuit an 'unsubstantiated' claim is only the former.").

Here, as already discussed, Plaintiff's FAC addresses both of the shortcomings the Court identified in her initial Complaint. First, Plaintiff's FAC now alleges that the Product's promise of "Appetite Control" is misleading because it conveys that the Product will help consumers control their appetite and that the promise of "Weight Management" is misleading because it conveys that the Product will help consumers manage their weight. Second, Plaintiff's FAC includes additional context on one of its studies to show how the study supports her claims. Specifically, the cited study, *Kovacs I*, tested whether "HCA supplementation might affect BW [body weight] regulation by inducing satiety and reducing food intake." [Doc. 11 at ¶ 17.] To study whether HCA affected appetite control, *Kovacs I* "measured participants['] hunger, appetite, anticipated food intake, desire to eat, fullness, satiety, and thirst." [*Id.* at ¶ 18.] The study concluded that "there was no statistically significant difference between HCA and a placebo on any of these appetite variables." [*Id.* at ¶ 18.] It further found that "supplementation with HCA . . . did not result in increased satiety or decreased energy intake compared to placebo." [*Id.* at ¶ 17.] The study concluded that it had "showed that HCA . . . [was] not effective with respect to satiety and energy intake[.]" [*Id* at ¶ 20.]

Defendant argues that *Kovacs I* limits its application to "what that study shows" – that "HCA *and HCA combined with MCT were* not effective with respect to satiety and energy intake." [Doc. 15 at p. 8 (emphasis added).] The Court is not persuaded that this phrase somehow undermines the study's direct application to the allegations in Plaintiff's Complaint. As relevant to this lawsuit, the study makes a specific finding on the impact of HCA, alone, on satiety and energy intake, *as well as* the impact of "HCA combined with MCT." *Id.*

Further, the Court finds the study's measurement of variables relevant to "Appetite Control" and "Weight Management" (e.g., hunger, appetite, anticipated food intake, desire to eat, fullness, satiety, and thirst) coupled with the study's ultimate conclusion that HCA is "not effective with respect to satiety and energy intake" cast sufficient doubt that Defendant's Product has the "Appetite Control" benefits it claims. *See also, e.g., Dorfman v. Nutramax Labs, Inc.*, 2013 WL 5353043 (S.D. Cal. Sept. 23, 2013), at * 12 ("Plaintiff cites to several scientific studies that allegedly undermine Defendants' representations. . . . The Court finds that these allegations are 'sufficiently detailed to give us some assurance that Plaintiff's theory has a basis in fact.'") (internal quotation marks and citations removed).

As to Plaintiff's contention that the Product misrepresents its ability to aid in "Weight Management," Plaintiff amended her Complaint to allege that "for a supplement to be effective in aiding weight management, it must help users either (1) lower their energy intake, (2) increase their energy output, or (3) otherwise alter the manner in which the body processes the energy they consume." [Doc. 11 at ¶ 13.] As to the first weight management mechanism, Plaintiff cites to *Kim*, which found that there was "[n]o effect of GCE [garcinia cambogia extract] supplementation on energy intake." [*Id.* at ¶ 28.] The *Kim* study authors "concluded that '[i]n agreement with past studies the present study provided no evidence that . . . GCE supplementation can modify calorie intake[.]" [*Id.* at ¶ 29.] As to the second mechanism (lowering energy expenditure), Plaintiff cited studies demonstrating that HCA does not affect metabolism or energy expenditure. *See* [*Id.* at ¶¶ 32-37; *see also id.* at ¶ 34

("no effect of HCA on fat oxidation or 24 h energy expenditure was found" when compared to a placebo); and *id* at ¶ 36 ("[t]here was no difference in SMR [sleeping metabolic rate], RMR [resting metabolic rate], DIT [diet-induced thermogenesis], and AEE [activity-induced energy expenditure] between treatments")]. Finally, as to the third mechanism (altering the manner in which the body processes the energy consumed), Plaintiff cites *Kriketos*, which explains that the only factor relevant to this mechanism is increased fat oxidation. And, as Plaintiff cites, studies find that HCA does not increase fat oxidation. *See, e.g.,* [Doc. 11 at ¶¶ 45-46 ("HCA supplementation also had no effect 'on circulating concentrations of blood substrates associated with fat oxidation[.]")].

Therefore, because Plaintiff cites to studies supporting her position that HCA does not impact appetite control or weight management, as the Product promises, Plaintiff's claims are facially plausible and do not merely allege a lack of substantiation. Despite Defendant's invitation, the Court declines to make further substantive findings about Plaintiff's proffered studies by weighing the evidence.[2] Indeed, "the issue of whether the proffered studies do in fact show that [the Product's] representations are provably false is a question not properly decided on a motion to dismiss." *Vasic v. Patent Health, LLC*, 2014 WL 940323, at *4 (S.D. Cal. Mar. 10, 2014).

---

[2] In conjunction with Defendant's invitation to weigh the strength of Plaintiff's studies, Defendant also requests judicial notice of three new scientific studies (Exhibits 13-15) not mentioned in Plaintiff's FAC and which Defendant argues contradict the studies Plaintiff cited in her FAC. [Doc. 12-2.] Considering such studies, however, would not only improperly convert this Motion to Dismiss into a Motion for Summary Judgment, but the studies are also outside the scope of evidence permitted under Federal Rule of Evidence 201. *See also U.S. v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003) ("[I]t would have been improper for the court to consider the . . . exhibits . . . without converting the motion to dismiss into a motion for summary judgment and giving [defendant] an opportunity to respond."). Regardless, the Court relies upon the FAC, alone, and does not rely on any of the 16 exhibits for which Defendant seeks judicial notice. Thus, Defendant's requests for judicial notice are DENIED AS MOOT.

## B. False or Misleading Misrepresentations

Similar to its lack of substantiation argument, Defendant contends Plaintiff's studies do not allege actionable misrepresentations. Specifically, Defendant argues that Plaintiff cannot demonstrate (1) a reasonable consumer would be deceived and (2) the Product's representations are false or misleading.

As to its first argument, Defendant theorizes that no reasonable consumer would be deceived into believing the Product could assist with weight management and appetite control because the Product's label does not include words like "weight loss" or "appetite reduction," and the label provides a disclaimer: that its "statements have not been evaluated by the Food and Drug Administration," and it "is not intended to diagnose, treat, cure or prevent any disease." [Doc. 12-1 at p. 17.] Contrary to Defendant's argument, Plaintiff has alleged a plausible basis for a reasonable consumer to be misled, including by promising benefits of "weight management" and "appetite control." Moreover, on a motion to dismiss, this Court "cannot hold as a matter of law that disclaimers vitiate claims for misleading representations." *Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 892 (N.D. Cal. 2016). By asking the Court to resolve whether a reasonable consumer would be deceived, Defendant asks the Court to make a determination of fact inappropriate at the motion to dismiss stage.

As to its second argument, Defendant contends that Plaintiff failed to show the Product's representations are false or misleading because her studies are insufficiently conclusive, and "the *mere existence* of scientific support and an acknowledgement that the issue is not settled are fatal to Plaintiff's claims." [Doc. 15 at p. 7.] In support, Defendant individually critiques each study cited by Plaintiff by contending that they do not apply to Plaintiff, are of limited applicability, are inconclusive, or are otherwise unreliable. As in its prior argument, Defendant's arguments about the cited studies ask the Court to both weigh the evidence and draw inferences in its favor. At the motion to dismiss stage, however, the Court may not engage in either of those tasks. *See, e.g., Vasic v. Patent*

*Health, LLC*, 2014 WL 940323 (S.D. Mar. 10, 2014), at *7 ("As noted by countless other courts that have addressed this same issue, the crux of the disagreement between the parties focuses on the strength of the evidence cited in the FAC . . . [and] the Court cannot resolve the parties' dispute at this juncture."). As already addressed regarding Defendant's substantiation argument, Plaintiff's FAC plausibly alleges the challenged representations are false or misleading, and she supports her claims with numerous studies. Therefore, Defendant's motion to dismiss on these grounds is denied.

**C. Primary Jurisdiction Doctrine Under the FDCA**

Defendant next argues that Plaintiff's claims violate the primary jurisdiction doctrine because she alleges violations of the Federal Food, Drug, and Cosmetic Act ("FDCA"). The Court does not agree. The primary jurisdiction doctrine "is a prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decision making responsibility should be performed by the relevant agency rather than the courts." *Davel Comm'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1086 (9th Cir. 2006). "[T]he doctrine applies where there is (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration." *Id.* at 1086. Notably, "the doctrine does *not*, however, require that all claims within an agency's purview be decided by the agency." *Id.* (emphasis added). Where "the allegations of the complaint do not necessarily require the doctrine's applicability, then the primary jurisdiction doctrine may not be applied." *Id.* at 1088.

When deciding whether to defer jurisdiction at the motion to dismiss stage, courts must "apply a standard derived from Rule 12(b)(6) jurisprudence: whether the complaint plausibly asserts a claim that would *not* implicate the [primary jurisdiction] doctrine." *County of Santa Clara v. Astra United States*, 588 F.3d 1237, 1251-52 (9th Cir. 2009) (declining to invoke primary jurisdiction where action would "plausibly be adjudicated" without agency's expertise), *rev'd on other grounds*, 563 U.S. 110 (2011). Here, Plaintiff's

FAC presents a typical false advertising case well within the province of the courts because "allegations of deceptive labeling do not require the expertise of the FDA to be resolved in the courts, as every day courts decide whether conduct is misleading." *Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 899 (N.D. Cal. 2012).

Contrary to Defendant's argument, Plaintiff's lawsuit does not "fundamentally challenge[] the ability of any manufacturer or distributor to sell Garcinia Cambodia products." [Doc. 12-1 at p. 29.] Rather, Plaintiff's claims concern Defendant's allegedly misleading labeling of its GCE/HCA product with promises of "weight management" and "appetite control," a determination this Court is equipped to make. Moreover, Defendant does not offer any evidence that the FDA has demonstrated some level of interest in regulating GCE/HCA products in this context. *See, e.g., Rikos v. Procter & Gamble Co.*, 782 F. Supp. 2d 522, 530 (S.D. Ohio 2011) ("[C]ourts have declined to apply the primary jurisdiction doctrine when the party seeking agency referral does not provide evidence that 'the FDA has actually taken any interest in investigating the claims or issues presented here.' ") (quoting *Pom Wonderful v. Ocean Spray Cranberries, Inc.*, 642 F. Supp. 2d 1112, 1123 (C.D. Cal. 2009)); *see also Cty. of Santa Clara*, 588 F.3d at 1252 (concluding that dismissal was not warranted on primary jurisdiction grounds because the consumers' "claims do not necessarily implicate primary jurisdiction, and the FDA has shown virtually no interest in regulating DHA in this context").

Likewise, the cases Defendant cites in support of this argument are inapposite. For example, Defendant cites to *Clark v. Time Warner Cable*, 523 F.3d 1110 (9th Cir. 2008). In *Clark*, the Ninth Circuit found the primary jurisdiction doctrine applied in part because the FCC had issued a Notice of Proposed Rulemaking showing "that the agency [wa]s actively considering how it w[ould] regulate VoIP services," an issue central to the resolution of the plaintiff's claims. *Id.* at 1115. The parties have not raised any such notice or other indication by the FDA that the agency is interested in regulating some aspect of Plaintiff's claims.

Because Plaintiff's claims do not necessarily require FDA expertise, offer "an issue of first impression," or offer an issue outside "the conventional experience of judges," the doctrine of primary jurisdiction is not implicated at this early pleading stage. *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002). Therefore, the Court declines to dismiss or stay the action.

**D. Standing**

Next, Defendant contends that Plaintiff's requests for injunctive relief under her class allegations and claims for violations of the UCL, FAL, and CLRA must be dismissed for lack of standing under Rule 12(b)(1). To satisfy Article III standing, Plaintiff must allege an injury-in-fact that is concrete and particularized, and actual or imminent; that the injury is fairly traceable to Defendant's challenged action; and that it is likely, not merely speculative, that a favorable ruling will redress the injury. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000).

To establish standing for the injunctive relief she requests, then, Plaintiff must establish a "real or immediate threat" of repeated injury. *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1042 (9th Cir. 1999). As Defendant argues, however, Plaintiff cannot show a likelihood of future injury where she has no interest in purchasing the Product again because it does not work or perform as labeled. *See, e.g.*, [Doc. 11 at ¶ 121 ("Product . . . is worthless since it is incapable of providing any such benefits"); *id.* at ¶ 127 ("Plaintiff would not have purchased the Product if she knew that its labeling claims were false or misleading, or that the Product is incapable of providing the claimed benefits")]. Courts in other false and misleading advertising cases have found the same. *See, e.g., Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *12 (C.D. Cal. Apr. 9, 2014) (finding plaintiff lacked standing for injunctive relief "because Plaintiffs have no reason to re-purchase cold and flu products that they consider to be completely worthless and ineffectual"); *Delarosa v. Boiron, Inc.*, 2012 WL 8716658, at *4 (C.D. Cal. Dec. 28, 2012) ("Because Plaintiff does not believe the product works and does not intend to purchase it again, there is not a sufficient likelihood that she will again be wronged in a similar way."). Plaintiff offers no

response to Defendant's Rule 12(b)(1) attack. For the previous reasons, Defendant's motion to dismiss is **GRANTED** as to Plaintiff's requests for injunctive relief in the FAC's Paragraphs 134.i, 153, 162, 163, and 169.

**E. Rule 9(b)**

In its Rule 9(b) argument, Defendant contends that Plaintiff's FAC fails to meet the heightened pleading standard for fraud-based claims. Under Rule 9(b), a plaintiff must state with particularity "the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). "Plaintiffs must plead enough facts to give defendants notice of the time, place, and nature of the alleged fraud, together with an explanation of the statement and why it was false or misleading." *Dabish v. Brand New Energy, LLC*, 2016 WL 7048319, at *3 (S.D. Cal. Dec. 5, 2016).

Defendant contends that Plaintiff "fails to allege at which Vitamin Shoppe she purchased the Product, the exact date of purchase, the method of purchase (i.e., cash or credit card), the purchase price of the product, or how much she paid." [Doc. 12-1 at p. 34.] Contrary to Defendant's position, however, Plaintiff pleads her claims with sufficient particularity by alleging that, in approximately "February 2017 in San Diego," she "purchased a 180-caplet bottle of [the Product] for approximately $20 from Vitamin Shoppe." [Doc. 11 at ¶ 115.]; *see Dabish*, 2016 WL 7048319, at *3. Plaintiff identifies the specific statements she alleges are misleading (e.g., "Weight Management" and "Appetite Control"), attaches the Product's labels, and alleges how the Product's claims are misleading (by not actually providing the advertised benefits).

Defendant further argues that Plaintiff "fails to allege she consumed the Product, . . . that she took it as directed on its label," or her weight and exercise habits. [Doc. 12-1 at p. 24.] Defendant offers no authority showing that Rule 9(b) requires such allegations, including actual consumption of the Product. Moreover, Plaintiff's claims do not pertain to whether she, personally, experienced the Product's advertised benefits; they pertain to the Product's mislabeling, based on the Product's inability to actually deliver the claimed

benefits. In other words, Plaintiff's claims do not turn on her personal use of the Product *after* purchase. Instead, her claims turn on whether the Product's labeling, which led her to purchase the Product, was false or misleading. *See also Dabish*, 2016 WL 7048319, at *3 ("Plaintiff need not allege consumption of the product . . . [or] that he did not experience any advertised benefits. The allegations do not pertain to allegations of benefits. The allegations pertain to mislabeling the products."). Thus, the Court rejects Defendant's Rule 9(b) argument.

**F. Breach of Warranties Claims**

Defendant additionally moves to dismiss for failure to state a claim Plaintiff's claims for (1) breach of express warranty and (2) breach of the implied warranty of merchantability. The Court considers each claim in turn.

1. Breach of Express Warranty

California Commercial Code § 2313, which defines express warranty, applies to "transactions in goods." *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 893 (C.D. Cal. 2013) (quoting Cal. Com. Code § 2102). To prevail on a breach of express warranty claim, a plaintiff must prove that the seller "(1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." *Id.* at 893 (quoting *Rodarte v. Philip Morris, Inc.*, 2003 WL 23341208, *7 (C.D. Cal. June 23, 2003)).

Plaintiff brings a Breach of Express Warranty claim for the Product's affirmation of fact or promise that it would help in "Weight Management" and "Appetite Control," despite her allegation that the Product's ingredients are incapable of doing so. The Court is not persuaded by Defendant's argument that these phrases are not affirmations of fact or promise because they are "merely indications of use for the Product." [Doc. 12-1 at p. 27.] Plaintiff plausibly alleges an affirmation of fact or promise by pleading that the Product's label promises consumers help with "Weight Management" and "Appetite Control." *See also, e.g., Martinez-Leander v. Wellnx Life Sciences, Inc.*, (C.D. Cal. Mar. 6, 2017)

(rejecting argument that "Plaintiff fails to plausibly allege any breach of any affirmative promise or act" where "Plaintiffs allege that Defendants marketed the Products as an effective weight loss aid, despite knowing that its only active ingredient HCA, is completely incapable of aiding in weight loss.").

The Court further rejects Defendant's contention that Plaintiff "fails to allege breach and/or the requisite element of injury as she does not allege ever taking the Product." As already discussed in Section II.E., Plaintiff's breach of warranty claim focuses on the Product's labels, not Plaintiff's personal consumption of the product. Thus, Plaintiff plausibly alleges breach of the express warranty by pleading her theory that the Product is ineffective because it does not deliver the "Weight Management" and "Appetite Control" benefits its labels advertise.

2. Breach of Implied Warranty of Merchantability

"To establish a claim for a breach of implied warranty, the plaintiff must demonstrate that a product is not 'fit for the ordinary purposes for which such goods are used' or fails to 'conform to the promises or affirmations of fact made on the container or label.'" *Martinez-Leander v. Wellnx Life Scis., Inc.*, 2017 WL 2616918, at *6 (C.D. Cal. Mar. 6, 2017) (quoting *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1163 (C.D. Cal. 2012); Cal. Civ. Code § 1791.1(a)(2), (4)). Defendant contends that Plaintiff "fails to allege that the Product lacks even the most basic degree of fitness for ordinary use." [Doc. 12-1 at p. 28.] The Court disagrees. Plaintiff alleges that "[t]he Product, which has the sole intended purpose is as a dietary aid, is worthless since it is incapable of providing any such benefits," and the Product "does not aid in weight management and appetite control." [Doc. 11 at ¶¶ 122, 180.] Such allegations sufficiently state a claim that the Product "do[es] not conform to the promises or affirmations contained on the . . . label." *Martinez v. Metabolife Int'l, Inc.*, 6 Cal. Rptr. 3d 494, 400 (Cal. App. Ct. 2003); *see also Martinez-Leander*, 2017 WL 2616918, at *6 (denying motion to dismiss implied warranty claims where "Plaintiff alleges that Defendants' [Garcinia Cambogia] Products are not merchantable because they cannot cause weight loss"). Likewise, the Court rejects Defendant's unsupported assertion

that Plaintiff's purchase of the Product is not enough and that she, instead, must "try" the Product to bring this claim. [Doc. 15 at p. 13.]

## III. CONCLUSION

For the previous reasons, Defendant's motion to dismiss Plaintiff's FAC is **GRANTED IN PART AND DENIED IN PART**. As to Plaintiff's requests for injunctive relief in Paragraphs 134.i, 153, 162, 163, and 169, the motion is **GRANTED**. As to Defendant's remaining arguments for dismissal, the motion is **DENIED**.

**IT IS SO ORDERED.**

DATED: March 12, 2019

HON. ROGER T. BENITEZ
United States District Judge